IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PHILLIPPE ROGERS ) | |
| ) | |
| v. ) | No. 3:08-0547 |
| ) | Judge Trauger/Bryant |
| DAVIDSON COUNTY SHERIFF'S OFFICE, ) | |
| et al. ) | |

To:   The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

### I.  Introduction

Plaintiff, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit on April 23, 2008, challenging the conditions of his confinement under 42 U.S.C. § 1983. Named as defendants are the Davidson County Sheriff's Office, Sheriff Daron Hall, and Corrections Officers Sharon Harris, Clarence Crowley, and Michael Graulau; ABL Management, Inc.; and, Correct Care Solutions, LLC, Dr. Grady Judson ("Judd") Bazzell, and nurse Amy (Jones) Redd.  Motions for summary judgment have been filed on behalf of all defendants (Docket Entry Nos. 62, 69, 76), and are currently pending.

This case is scheduled for a jury trial on June 30, 2009, before Judge Trauger; the final pretrial conference is scheduled before the undersigned on June 12, 2009.  (Docket Entry Nos. 107, 108)

Having considered the arguments and evidence submitted by all parties, the undersigned, for the reasons given below, hereby recommends that defendants' motions for

summary judgment be GRANTED IN PART, and that plaintiff's complaint be DISMISSED WITHOUT PREJUDICE as to his Eighth Amendment claims due to his failure to properly exhaust available administrative remedies, and DISMISSED WITH PREJUDICE as to his Fourteenth Amendment due process claims.

## II. Undisputed Facts

At all times pertinent to this lawsuit, plaintiff was an inmate at the Davidson County Criminal Justice Center, a facility which houses pretrial detainees under the authority of the Davidson County Sheriff's Office ("DCSO"). During the time of plaintiff's incarceration there, from May 2007 to September 2008, Correct Care Solutions, Inc. ("CCS") was the contract provider of health care services to inmates at the Criminal Justice Center. ABL Management, Inc. ("ABL") was the contract provider of food services to inmates at the Criminal Justice Center.

Plaintiff suffers from multiple sclerosis ("MS"), an incurable, progressive autoimmune disease which affects the central nervous system and manifests in a relapsing/remitting pattern of symptomatic "attacks."[1] Plaintiff's pre-incarceration medical records showed that he had failed conventional medical treatment with interferons such as Avonex, and with immunomodulators such as Copaxone. Prior to his incarceration, plaintiff's most recent medical therapy had included "'Apitherapy,' Procaron[,] a histamine patch, chelation for the viral aspects and chelation for the toxic aspects of MS; an organic-foods diet, physical therapy for muscle development and Marinol for relief from the muscle

---

[1] http://www.nlm.nih.gov/medlineplus/ency/article/000737.htm

2

spasms MS inflicts upon the body."[2] (Docket Entry No. 1 at 3A, ¶ 3(a)) Dr. Bazzell and other CCS staff provided orders requiring plaintiff's assignment to a bottom bunk and his receipt of a modified, high fiber diet during his stay at the Criminal Justice Center. Dr. Bazzell declined to pursue any alterative treatments for plaintiff's MS, such as those identified above, but instead treated the pain symptoms as they occurred with anti-inflammatory and antidepressant medications, as well as treating plaintiff's reported muscle spasms with a muscle relaxant medication.

Plaintiff on occasion failed to receive the appropriate high-fiber foods with the meals prepared by ABL staff. Plaintiff filed initial grievances concerning both this failure to heed his special diet requirement, and the failure of Dr. Bazzell to treat his MS with the medications he had received prior to his incarceration. The first such grievance was filed in September 2007, when plaintiff complained of improper medical treatment of his MS. (Docket Entry No. 1 at 3B) The response to this grievance, attached to plaintiff's complaint, is dated September 17, 2007, and provides as follows:

> INMATE HAS RECEIVED MEDICAL TREATMENT FROM CJC. HAS BEEN EVALUATED AT SICK CALL AND SEEN BY PROVIDER. ALSO SCHEDULED TO SEE PROVIDER THIS WEEK. THE INMATES PREVIOUS THERAPIES OF APITHERAPY, CHELATION THERAPY OR CANNABIS THERAPY, AS MENTIONED IN GRIEVANCE, ARE NOT STANDARDS OF TREATMENT FOR MS AND THEREFORE WILL NOT BE PRESCRIBED BY THE HEALTHCARE PROVIDER. UNSUSTAINED

(Docket Entry No. 1, attachment) When plaintiff first grieved an instance of noncompliance with his dietary modification, in October 2007, his grievance was sustained in a response

---

[2]Apitherapy is an alternative treatment utilizing honeybee venom. Chelation is an intravenous detoxification therapy. Marinol is a prescription medication the active ingredient of which is a synthetic derivative of marijuana.

dated October 22, 2007, also attached to his complaint. Id. However, plaintiff again grieved the composition of his meal serving in November 2007, resulting in a November 20, 2007 response of "unsustained," accompanied by the clarification that the high fiber modification is achieved by sending all inmates with such a requirement a fruit, vegetable, and/or whole wheat bread, amounting to a total of 28-32 grams of fiber a day -- a standard which ABL purported to meet in plaintiff's case. Id. In the only other grievance filing of record which preceded the filing of plaintiff's complaint, it was alleged by grievance dated January 30, 2008, that the lunch serving on January 23, 2008 did not contain any whole wheat, fruit, vegetables or chips; this grievance was not sustained. (Docket Entry No. 64, Exh. A at 5)

Plaintiff did not appeal from the denial of these unsustained grievances. Rather, the record reveals that plaintiff filed as many as six additional, initial grievances in 2008, at times when he was dissatisfied with the service of meals that he felt did not meet the high fiber requirement. The grievances included in the record (Docket Entry No. 64, Exh. A at 1-9; Docket Entry No. 96 at 18-23; Docket Entry No. 98-2 at 4-8) do not reflect any further attempt by plaintiff to grieve the nature of the pharmacological treatment he was receiving.

The DCSO policy regarding inmate grievances contains the following provision with respect to an inmate's right of administrative appeal from an unsustained grievance:

> **Appeals**
> An inmate dissatisfied with a grievance response may appeal it to the facility administrator, or, if the administrator is the subject of the complaint, to the chief deputy. Appeals should be made within five working days of receiving the response that is being appealed. The grievance coordinator will record the appeal and forward it to the appropriate responder, who will answer it within

4

seven working days.

(Docket Entry No. 74, Exh. A) The entire DCSO grievance policy is contained in the inmate handbook which was provided to plaintiff, as it is to every inmate, at the outset of his term of incarceration.

### III. Conclusions of Law

#### A. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In determining whether the movant has met its burden, the court must view the evidence in the light most favorable to the nonmoving party. Matsushita Electric Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1356 (1986). In order to withstand summary judgment, the nonmoving party "may not rest on its pleadings, but must come forward with [admissible] evidence from which a rational trier of fact could find in its favor." Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999).

#### B. Analysis

Defendants have raised the affirmative defense of plaintiff's failure to properly exhaust available administrative remedies in this matter. Under the Prison Litigation Reform Act ("PLRA"), a prisoner is required to exhaust all such remedies before filing a § 1983 action in district court. 42 U.S.C. § 1997e(a); see Booth v. Churner, 532 U.S. 731, 733 (2001). Full

5

exhaustion is thus a precondition to filing an action in federal court, not an exercise to be initiated prior to filing suit and completed during the pendency of the suit. Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007)(citing Porter v. Nussle, 534 U.S. 516, 524 (2002)). In order to properly exhaust all available administrative remedies, the prisoner must complete the administrative review process as defined by the grievance procedures in place at the prison; the PLRA itself does not define the boundaries of proper exhaustion. Id. at 218. Thus, in order to properly exhaust all remedies available to him at the Criminal Justice Center, plaintiff would have had to execute an appeal from the denial of those grievances which form the basis of his lawsuit, pursuant to DCSO's published grievance procedures establishing the right of appeal to the "facility administrator." See Lewis v. England, 2008 WL 160778 (M.D. Tenn. Jan. 15, 2008); see also Hartsfield v. Vidor, 199 F.3d 305, 309 (6th Cir. 1999)(citing Wright v. Morris, 111 F.3d 414, 417 n.3 (6th Cir. 1997), cert. denied, 522 U.S. 906 (1997)).

There is no evidence in the record of plaintiff appealing from the denial of any of his grievances. Indeed, plaintiff admitted at his deposition that he did not file any such appeal (see Docket Entry No. 62, Exh. A at 163). Consequently, plaintiff did not properly exhaust his administrative remedies.

Plaintiff's justification for this failure to pursue any administrative appeal is that "[u]pon filing a grievance, Plaintiff could never get the original or a copy back from DCSO to effectively file a timely appeal. On medical issues DCSO did not give timely responses to grievances filed. Plaintiff suffers from multiple sclerosis which affects his

6

memory. He could not make an appeal accurately [without a copy of his initial grievance]." (Docket Entry No. 101 at 3)[3] With all due respect, this explanation does not hold water. As demonstrated by the grievance responses attached to plaintiff's complaint, the substance of the grievance is fairly represented in the responses which plaintiff received. Even if extraneous details from the initial grievance may have informed a potential appeal from these responses, it is clear that the gravamen of plaintiff's grievances was restated in the official responses, such that his poor recall secondary to MS would not appear to be a legitimate obstacle to proper exhaustion of the claims he is attempting to assert in district court. Furthermore, even if the grievance responses were not forwarded to plaintiff in a timely fashion -- which is doubtful considering the allegations of the complaint, the dates which the response forms attached to the complaint bear, and the internal DCSO records which catalogue the filing dates of both grievances and responses (Docket Entry No. 64, Exh. A at 1,4) -- his time in which to file an appeal runs from the date of his receipt of such untimely response, according to the DCSO grievance procedures detailed above, supra at 3. Thus, plaintiff was not foreclosed from filing a timely, effective appeal of these grievance denials. Rather, it was his choice to refrain from filing any appeal without the benefit of having his original, handwritten grievance to refer to -- a choice which short-circuited his pursuit of administrative relief and thus forecloses his claims in litigation under the PLRA.

---

[3]Also in his response to DCSO's motion, plaintiff attempts in passing to claim that he did appeal one of the operative grievance denials, citing to the printout of DCSO's catalogue description of grievance status as "Closed-Appealed." See Docket Entry No. 64, Exh. A at 4. However, this claim is entirely disingenuous, as it is contrary to plaintiff's unequivocal deposition testimony and his principal argument in excuse of his failure to appeal. The internal DCSO designation of "Closed-Appealed" status appears to be nothing more than a mistaken selection from the drop-down menu, from which "Closed-Unsustained" should have been selected. Cf. id. at 5.

7

Accordingly, plaintiff's Eighth Amendment claims of deliberate indifference to his serious medical needs in the denial of his preferred MS treatments and in the haphazard compliance with the medical modifications to his diet should be dismissed without prejudice for failure to properly exhaust available administrative remedies.

The only other claims presented in plaintiff's complaint (those contained at pages 3D and 3E, paragraph 8, as well as 3F, paragraph 5, of his complaint), which are arguably not subject to dismissal for failure to exhaust administrative remedies,[4] are alleged as follows:

> 8. Plaintiff has filed multiple grievances concerning CCS taking his money when they just tell him "we can't (or won't) do anything."
>    a. None of these grievances have been responded to.
>    b. Plaintiff cannot obtain copies of the grievances he files, no receipt is given when the grievance is filed, and Plaintiff has only received responses from approximately 4 out of 10 grievances filed.
>    c. The grievance system in place violates due process; Plaintiff is required to work on the HOPE they'll process the grievance, which frequently they won't.

* * *

> 5. Plaintiff would aver that [employees] of CCS have falsified documents to receive payments for medical services and medications plaintiff never received, and have forged plaintiff's signature on refusal [of treatment] forms etc. to justify their non-actions or to deduct payment from plaintiff's inmate account.

These allegations appear to correspond with what plaintiff subsequently

---

[4]The Supreme Court in Jones v. Bock made it clear that the exhaustion issue should be addressed on a claim-by-claim basis, and that exhausted claims should be allowed to proceed, while unexhausted claims are dismissed from the lawsuit. 549 U.S. at 219-224.

clarified as his allegations against defendant Amy (Jones) Redd.  See Docket Entry No. 96 at 3, ¶ 7.

To the extent that these allegations are sufficient to state a Fourteenth Amendment due process claim regarding the deprivation of funds from plaintiff's inmate trust account, and to the extent that the verified allegation of defendants' failure to respond to his grievances is sufficient to establish proper exhaustion of available administrative remedies, the undersigned finds that the claim should be dismissed on the merits, since as a matter of law a claim for loss of personal property is not cognizable as a due process claim under § 1983 unless the state fails to provide an adequate post-deprivation remedy, Parratt v. Taylor, 451 U.S. 527, 536-544 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986), and Tennessee's statutory post-deprivation remedy has been found adequate for due process purposes.  Brooks v. Dutton, 751 F.2d 197, 199 (6th Cir. 1985).  Moreover, it is clear that any institutional lack of responsiveness to grievances does not implicate the grievant's substantive right to due process.  E.g., Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)(collecting cases).  Therefore, the undersigned finds that as a matter of law, the due process claims contained in plaintiff's case should be dismissed with prejudice.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that defendants' motions for summary judgment be GRANTED IN PART, and that plaintiff's complaint be DISMISSED WITHOUT PREJUDICE as to his Eighth Amendment claims due to his failure to properly exhaust available administrative remedies, and DISMISSED WITH PREJUDICE as to his Fourteenth Amendment due process claims.

9

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

ENTERED this 22nd day of May, 2009.

                                     s/ John S. Bryant
                                     JOHN S. BRYANT
                                     UNITED STATES MAGISTRATE JUDGE